IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WANDA TORRENCE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PARKWAY GARDENS for AMERICAN )<br>APARTMENT MANAGEMENT, )<br>)<br>Defendant. ) | No. 05 C 0282<br><br>Judge Robert Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a four-count amended complaint on August 12, 2005, alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., as amended by the Fair Housing Amendments Act of 1988, and civil trespass by defendant Parkway Gardens for American Apartment Management ("Parkway"). Defendant has filed a motion to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that her claims are barred by res judicata. Defendant argues, in the alternative, that plaintiff's amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because this court lacks jurisdiction under the Rooker-Feldman doctrine. For the reasons stated below, the court grants defendant's motion to dismiss Counts II and III, and denies defendant's motion to dismiss Counts I and IV.

## STATEMENT OF FACTS

Plaintiff, a participant in the Section 8 subsidized housing program administered by the U.S. Department of Housing and Urban Development ("HUD"), lived in an apartment owned by Parkway for approximately seven years until she was evicted on November 23, 2004, by the Cook County Sheriff pursuant to an order of the Circuit Court of Cook County. Plaintiff, who

suffers from a hearing impairment and depression, alleges that defendant, despite advertising "accessible" apartments for "low income" people, failed to accommodate her by providing a secure rear door or a strobe-light doorbell to alert her when someone was at the door. Plaintiff alleges that defendant ignored her repeated requests for accommodation and evicted her in retaliation for filing a complaint with HUD. Plaintiff also alleges that defendant's employees repeatedly trespassed by entering her apartment without her prior knowledge or consent, often frightening her and seeing her undressed.

In early March 2003 plaintiff spoke to a HUD employee about her lack of a strobe-light doorbell. HUD contacted defendant and spoke with Celeste Hampton ("Hampton"). HUD then informed plaintiff that Hampton had agreed to install a doorbell. Hampton subsequently called plaintiff and asked plaintiff if she "really needed the doorbell," and then told plaintiff that they should "pretend" that defendant had already taken care of it. Defendant took no steps to install the special doorbell. On April 22, 2003, plaintiff informed HUD that defendant had not installed the doorbell or secured her rear door. Plaintiff filed a complaint with HUD that was investigated by the Illinois Department of Human Rights. As a result of the investigation, on June 5, 2003, a strobe-light doorbell was installed in plaintiff's apartment and thin metal bars were placed on the glass portion of her rear door. According to plaintiff, these bars did not address her safety and privacy concerns because people passing the door, who she was unable hear, could see her.

In early August 2003, plaintiff called defendant to confirm an understanding based on earlier discussions that she could pay her August late in order to offer financial assistance to her daughter. Plaintiff spoke with Hampton and Dan Nagle ("Nagle"), a vice president of defendant. Nagle informed plaintiff that defendant would not agree to late payment of her August rent

unless plaintiff dropped her HUD complaint. Plaintiff would not agree to drop her HUD complaint. That day, concerned that she would be evicted, plaintiff went to defendant's office and attempted to pay her August rent. Victor Thompson ("Thompson"), defendant's employee, refused to accept plaintiff's payment. The following day, plaintiff sent an e-mail to Patty Ownby ("Ownby"), defendant's president, informing her that Nagle had threatened to evict her for refusing to drop her HUD complaint. Ownby responded in an e-mail, stating that she would investigate the matter.

On August 12, 2003, plaintiff received a phone call from Sewellyn Cate ("Cate"), informing plaintiff that she would be receiving a package from defendant. Later that day, a security guard for defendant delivered a package to plaintiff that included an agreement. The agreement stated that in exchange for dropping her HUD complaint and relinquishing all claims against defendant, plaintiff could pay her August rent in September and would be paid $1,500 by defendant. Plaintiff called Cate and informed her that she would not accept the agreement. Within an hour of this conversation, a security guard for defendant brought plaintiff a letter informing her that she would be evicted if she did not pay rent within five days. Plaintiff went to defendant's office and again attempted to pay her August rent. Again, Thompson refused to accept her payment.

Defendant instituted a forcible entry and detainer action against plaintiff in the Circuit Court of Cook County on August 22, 2003. Defendant claimed $142.00 in unpaid rent. Acting pro se, plaintiff filed an amended counterclaim on September 10, 2004, seeking, among other things, money damages. Defendant filed a motion to strike and dismiss plaintiff's amended counterclaim, arguing that the circuit court lacked jurisdiction to hear plaintiff's claims for

money damages.

On September 22, 2004, the circuit court entered an order of possession against plaintiff. On November 16, 2004, the circuit court entered an order dismissing plaintiff's amended counterclaim. On November 29, 2004, plaintiff filed an appeal of the November 16 order. Plaintiff was evicted on November 23, 2004, and became homeless. On June 7, 2005, the Illinois Appellate Court, First District, dismissed plaintiff's appeal.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).

Rule 12(b)(1) motions are premised on either facial or factual attacks on jurisdiction. Villasenor v. Industrial Wire & Cable, Inc., 929 F. Supp. 310, 311 (N.D.Ill. 1996). Relevant to the instant case, if the defendant makes a factual attack on the plaintiff's assertion of subject matter jurisdiction, it is proper for the court to look beyond the jurisdictional allegations in the complaint and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993) (per curiam); Barnhart v. United States, 884 F.2d 295, 296 (7th Cir. 1989). A movant may attach affidavits or other material in support of its 12(b)(1) motion.[1]

---

[1] The court notes that defendant improperly states that its statement of facts in support of its motion to dismiss is filed pursuant to L.R. 56.1(a)(3). L.R. 56.1 statements, however, are proper in support of summary judgment motions only. Because defendant's statement of facts

## I. The Rooker-Feldman doctrine

"Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." State of Illinois v. City of Chicago, 137 F.3d 474, 478 (7th Cir. 1998), see also Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996) ("Where Rooker-Feldman applies, lower federal courts have no power to address other affirmative defenses, including res judicata."). Defendant argues that this court is without subject matter jurisdiction to hear plaintiff's claims because she is seeking review of the state court's entry of an order of possession against plaintiff.

Under the Rooker-Feldman doctrine, federal courts other than the United States Supreme Court have no jurisdiction to review state court judgments unless Congress has expressly authorized them to do so. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Long v. Shorebank Dev. Corp., 182 F.3d 548, 553 (7th Cir. 1999). The Rooker-Feldman doctrine "applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." Long, 182 F.3d at 554. In the instant case, the question is whether the injuries alleged by plaintiff resulted from the state court judgment itself or are distinct from that judgment. See Garry v. Gelis, 82 F.3d 1362, 1365 (7th Cir. 1996).

Plaintiff argues that Rooker-Feldman does not apply, relying heavily on the Seventh Circuit's holding in Long. In Long, the plaintiff alleged that the defendants, who had obtained a court-ordered eviction of the plaintiff, violated the Fair Debt Collection Practices Act

---

relates only to its jurisdictional arguments, the court does not convert the instant motion into a motion for summary judgment.

("FDCPA"), 15 U.S.C. § 1692 et seq., by misrepresenting the character of the debt owed by the plaintiff and serving her with a notice of a debt they knew to be untrue. Id. at 556. The Seventh Circuit held that a federal court would generally lack jurisdiction over the FDCPA claims under Rooker-Feldman, but for a unique procedural law in Illinois regarding forcible entry and detainer proceedings, 735 ILCS 5/9-106, which denied the plaintiff "a reasonable opportunity" to raise the issues in the state court proceedings. Id. at 558. Under 735 ILCS 5/9-106, "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." The Seventh Circuit noted that the Illinois court would have treated the plaintiff's FDCPA claims as not germane under 735 ILCS 5/9-106 to the action for forcible entry and detainer. Id. at 559-60. The Long court also held that the plaintiff's due process claim, which alleged that the defendants had deprived her of her property by instituting a baseless lawsuit, could not be considered separate from the eviction order entered against her. Id. at 556. In contrast to the FDCPA claim, Long did not apply the reasonable opportunity analysis to save the due process claims because they sought to remedy injuries directly caused by the eviction proceeding that therefore could have been raised in state court.

In the instant case, although neither party draws distinctions between plaintiff's four claims, there are important differences that significantly affect the application of the Rooker-Feldman doctrine and the Seventh Circuit's holding in Long. Counts I and IV of plaintiff's amended complaint do not challenge her eviction or seek damages caused by the eviction. Count I of plaintiff's amended complaint seeks money damages based on defendant's alleged failure to reasonably accommodate her disability in violation of the FHA. Count IV asserts a claim for damages for unlawful trespass, alleging that on at least five separate occasions defendant's

6

employees entered plaintiff's apartment with her prior consent or knowledge. Because these claims do not arise from the eviction itself and do not seek to overturn the state court's order of possession, they are not barred by the Rooker-Feldman doctrine. See Long, 185 F.3d at 556 (claim fell outside of the Rooker-Feldman doctrine because it was "independent of and complete prior to the entry of the eviction order."); Clabault v. Shodeen Management, 2005 WL 2592475, at *3 (N.D.Ill. Oct. 11, 2005) (alleged violations not barred by Rooker-Feldman because it preceded state action and thus remedy did not seek to overturn state court judgment).

Counts II and III, by contrast, do stem directly from the state court's order. Count II asserts a claim for discriminatory eviction, and Count III asserts that plaintiff's eviction was the result of unlawful retaliation. Both counts allege that defendant's refusal to accept plaintiff's rent in August 2004 and its subsequent initiation of a possession proceeding were motivated by a desire to retaliate against her for asserting her right to accessible housing. Defendant's discriminatory actions, if true, were reprehensible and unjust. Nevertheless, defendant is correct that the federal claims asserted in Counts II and III of plaintiff's amended complaint were germane to the state court proceedings. See Rosewood Corp. v. Fisher, 46 Ill.2d 249, 263 (1970) (claims of discrimination and civil rights violations are equitable defenses "germane to the distinctive purpose of the forcible entry and detainer actions"); Flowers, at *4 (plaintiff would have been afforded a reasonable opportunity to raise claims that racial animus motivated eviction at state court proceeding under 735 ILCS 5/9-106) (collecting cases). Because plaintiff was not denied a reasonable opportunity to present her Count II and Count III claims, plaintiff cannot avoid preclusion of these claims under the Rooker-Feldman doctrine.

The court is troubled by such a harsh result for a plaintiff who defended pro se an eviction

proceeding brought by experienced real estate lawyers. It is, however, the necessary by-product of the jurisdictional architecture of our system of judicial federalism that limits the ability of a lower federal court to interfere with state court judgments.

Because the court lacks jurisdiction of Counts II and III under the Rooker-Feldman doctrine, the court grants defendant's motion to dismiss Counts II and III.

## II. Res judicata

Defendant also argues that plaintiff's claim is barred by res judicata because the circuit court's dismissal of plaintiff's counterclaim constituted a "judgment on the merits." The doctrine of res judicata bars a subsequent action if: (1) there was previously a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties. Nowak v. St. Rita High School, 197 Ill. 2d 381, 390. The doctrine of res judicata extends not only to those claims actually decided in the first action, but also to those issues that could have been decided in that suit. Burris v. Progressive Land, 151 Ill.2d 285, 295 (1992).

Plaintiff argues that res judicata does not apply since plaintiff's claims were not adjudicated on the merits because the state court was barred by 735 ILCS 5/9-106 from considering these claims. Even if Counts II and III were not precluded by Rooker-Feldman, they are barred under res judicata because they challenge the motivation for plaintiff's eviction which, as discussed above, is germane to eviction proceedings. The circuit court was, however, barred by 735 ILCS 5/9-106 from considering Counts I and IV for the very reason that they were not germane to the eviction proceeding. Accordingly, Counts I and IV were not adjudicated on the merits, and are not barred by res judicata.

This result is supported by the holding in <u>Fayyumi v. City of Hickory Hills</u>, 18 F. Supp. 2d 909 (N.D.Ill. 1998), that the plaintiffs' claim that they were denied service, maintenance, and access to their apartments based on their national origin was not barred by res judicata because it was independent of their eviction. 18 F. Supp. at 919-20. The court noted, "Because the plaintiffs do not contend that they refused to pay rent because the defendants rendered their property hazardous and uninhabitable, these allegations were not germane to the issue of back rent, and therefore, possession." <u>Id.</u> The <u>Fayyumi</u> court held that because "formal barriers," namely 735 ILCS 5/9-106, prevented plaintiffs from raising this claim in state court, res judicata does not bar its consideration in federal court. <u>Id.</u> Analogously, the fact that defendant in the instant action allegedly failed to accommodate plaintiff's disability or illegally trespassed on her property was not germane to whether defendant was entitled to possession. Counts I and IV are therefore not precluded by res judicata. Accordingly, the court denies defendant's motion to dismiss Counts I and IV of plaintiff's amended complaint.

## CONCLUSION

For the reasons stated above, the court denies defendant Parkway's motion to dismiss Counts I and IV, and grants defendant Parkway's motion to dismiss Counts II and III. Defendant is directed to answer Counts I and IV on or before January 31, 2006.

**ENTER:** **January 10, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**

9